IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DARRELL J. LITTLEDEER,

     Plaintiff,

                                 6:12-cv-02024-PK

                                 OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

       Defendant.

PAPAK, Magistrate Judge:

     Plaintiff Darrell Littledeer seeks judicial review of the Commissioner of Social Security's

final decision denying his application for disability insurance benefits ("DIB") and supplemental

security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). This

court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), and the parties have

consented to adjudication by a Magistrate Judge. I have considered all of the parties' briefs and

all of the evidence in the administrative record. For the reasons set forth below, the
Commissioner's final decision is affirmed.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an
"inability to engage in any substantial gainful activity by reason of any medically determinable
physical or mental impairment which can be expected . . . to last for a continuous period of not
less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step
sequential process for determining whether a claimant has made the requisite demonstration. *See
Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520(a)(4),
416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only
at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v.
Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge ("ALJ") considers the claimant's work
activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i),
416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the
claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§
404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will
proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments.
*See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
impairment is "severe" if it significantly limits the claimant's ability to perform basic work
activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482
U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ability to perform basic work

activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520, 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520, 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related, physical and mental activities on a regular and continuing basis, despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. §§ 404.1525(a), 416.945(a); *see also* Social Security Ruling ("SSR") No. 96-8p, 1996 SSR LEXIS 5.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that

3 – OPINION AND ORDER

the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof is, for the first time, on the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether the claimant can perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(g), 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets its burden to demonstrate that the claimant is capable of performing jobs existing in significant numbers in the national economy, the claimant is conclusively found not to be disabled. *See id.* A claimant will be found entitled to benefits if the Commissioner fails to meet its burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

4 – OPINION AND ORDER

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* The court may not substitute its judgment for that of the Commissioner. *See id., citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## BACKGROUND

Littledeer protectively filed his applications for DIB and SSI on February 27, 2007, alleging disability as of January 1, 1998, due to degenerative disc disease, sciatic nerve damage, and arthritis. Tr. 173-80, 193.[1] Born in 1971, Littledeer speaks English and completed the eleventh grade He has past relevant work experience as a line cook, stock person, deli clerk, and as a janitor and a cleaner for his brother's cleaning business. Tr. 50-51, 370.

After his applications were denied initially and on reconsideration, Littledeer requested a hearing before an ALJ. Tr. 107. He appeared for two hearings before ALJ John Madden on November 3, 2010 and April 12, 2011. Tr. 41-88. At the first hearing, Littledeer testified that he occasionally helped his brother with his cleaning service, but had not worked a forty-hour workweek since April of 2009. Tr. 48-49. He testified that he could not do cleaning work full-time because his back "wouldn't take it," and stated that he had problems sitting and standing due to pain. Tr. 64. Littledeer suffered from knee pain due to a torn meniscus and a torn ACL. Tr. 67.

Littledeer testified that he has past work experience as a line cook, a stock person, and a deli worker. Tr. 50-51. He had not consumed alcohol for the past eight months prior to the

hearing. Tr. 50-52. He takes Azor, Dilantin, Abilify, Cymbalta, and Trazodone for his

symptoms, but noted no side effects aside from weight gain. Tr. 56. He also stated that he has

difficulty with memory and that he requires assistance from a nurse to manage and keep track of

his medications. Tr. 69. Littledeer also testified that he had a lot of conflict with co-workers

when he was working. Tr. 61.

After the hearings, ALJ Madden issued a decision finding Littledeer not disabled. Tr. 17-

39. The Appeals Council denied Littledeer's subsequent request for review, making the ALJ's

April 28, 2011 decision the final decision of the Commissioner. Tr. 1-6; *see* 20 C.F.R. §

422.210(a); *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). This action followed.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found that

Littledeer had not engaged in substantial gainful activity since the alleged onset date of April 20,

2009. Tr. 22. At the second step, the ALJ found that Littledeer had the following severe

impairments: cognitive disorder not otherwise specified ("NOS"); affective disorder; impulse

control disorder; alcohol abuse in remission; ACL and medial meniscus tear of the left knee; and

degenerative disc disease of the thoracic and lumbar spine. *Id.* Because the combination of

impairments was deemed severe, the ALJ properly proceeded to the third step of the analysis.

At the third step, the ALJ found that none of Littledeer's impairments met or equaled any

of the impairments enumerated in 20 C.F.R. § 404, subpt P, app. 1. Tr. 24. The ALJ therefore

conducted an assessment of Littledeer's RFC. Specifically, the ALJ found that during the

relevant adjudication period Littledeer could perform medium level work with the following

limitations: he can occasionally lift and carry 50 pounds; he can frequently lift and carry 25

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the

6 – OPINION AND ORDER

pounds; he can stand and walk about six hours in an eight hour workday; and he can perform only simple, routine tasks with occasional public contact. Tr. 25. In reaching these conclusions, the ALJ considered all of the objective medical evidence in the record, opinion evidence, and Littledeer's own statements regarding his symptoms and limitations. Tr. 25-26.

At the fourth step of the five-step process, the ALJ found that Littledeer could perform his past relevant work as a janitor and cleaner. Tr. 32. While such a finding at step four is sufficient to find the claimant not disabled, the ALJ proceeded to the fifth step, finding that Littledeer's RFC afforded him "substantial room for other work" in addition to his past janitorial work. Tr. 33. Based on his step four findings or, in the alternative, his step five findings, the ALJ concluded that Littledeer was not disabled. *Id.*

### ANALYSIS

Littledeer argues that the Commissioner erred because he (1) did not fully credit his subjective symptom testimony; (2) improperly rejected the opinion of Dr. Martin Smart; (3) improperly rejected the opinions of his mental health treatment providers Dr. Williams and Stacy Van Epps; (4) improperly evaluated the lay opinion evidence of Michelle Littledeer; (5) failed to find that he meets a listed impairment; and (6) failed to formulate a correct RFC. Because the Court finds that the ALJ's decision was legally sound and supported by substantial evidence, the Commissioner's decision is affirmed.

### I.    The ALJ's Credibility Finding

Littledeer argues that the ALJ did not fully credit his testimony. Pl.'s Br. 35-36. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue,*

---

administrative record filed herein as Docket No. 11.

572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has

presented objective medical evidence of an underlying impairment which could reasonably be

expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. When

doing so, the claimant "need not show that her impairment could reasonably be expected to cause

the severity of the symptom she has alleged; she need only show that it could reasonably have

caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he

must state which pain testimony is not credible and what evidence suggests the complaints are

not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)).

The ALJ may consider objective medical evidence and the claimant's treatment history,

as well as the claimant's daily activities, work record, and observations of physicians and third

parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at

1284. The Commissioner recommends assessing the claimant's daily activities; the location,

duration, frequency, and intensity of the individual's pain or other symptoms; factors that

precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any

medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other

than medication, the individual receives or has received for relief of pain or other symptoms; and

8 – OPINION AND ORDER

any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96–7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider ... ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms ... other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 949 (9th Cir. 2002).

Here, the ALJ rejected Littledeer's subjective symptom testimony to the extent that it was belied by his work activities. Tr. 27. In weighing a claimant's credibility, the ALJ may consider inconsistencies between a claimant's testimony and his work record. *Thomas*, 278 F.3d at 959 (upholding ALJ's negative credibility finding where claimant "had not been a reliable historian"). Evidence in the record suggests that Littledeer's work activity conflicts with his self-reported limitations. Tr. 27. On November 29, 2008, Littledeer completed a Work History Report where he stated that he worked "2-4" hours per day, four days per week, as a janitor and pressure washer. Tr. 220-24. He also reported limited income in his earnings records. By contrast, he reported to State investigator Leon LeFebvre on August 14, 2007 that he was "working full-time" for his brother's janitorial business, Clean Rite Janitorial. Tr. 27, 521-22. When asked to describe his responsibilities at Clean Rite, he reported that he regularly cleaned residential property for a property management company. Tr. 522. On the day of his interview

9 – OPINION AND ORDER

with Agent LeFebvre, Littledeer said he was washing windows using a pressure washer "from the ground with a pole." *Id.* He also stated that his brother was away on vacation and he was running the business by himself, suggesting that he was capable of sustaining full-time employment. *Id.* Littledeer's work activity thus contradicts his subjective symptom testimony that he could not perform more than a few minutes of work, and constitutes a specific, clear and convincing reason for rejecting his testimony regarding physical limitations. *Dodrill*, 12 F.3d at 918; *see also Thomas*, 278 F.3d at 959.

Further, Littledeer exhibited a lack of candor regarding his work activity in his application to the Agency. *See Smolen*, 80 F.3d at 1284 (the ALJ may employ ordinary techniques of credibility evaluation when weighing a claimant's testimony). On his rental application, Littledeer reported to his landlord that he earned a consistent income from his brother's business for the past seven years. Tr. 520. Moreover, a physical exam of Littledeer on May 2, 2007, revealed calloused hands and dirt under his fingernails, suggesting a greater level of work activity than alleged in his application and in his testimony before the ALJ. Tr. 440. Despite the fact that his reported work activity occurred prior to the alleged onset date these discrepancies are relevant because they speak to Littledeer's level of candor and honesty.[2] Littledeer's lack of candor to the Agency regarding his work history was an additional reason for the ALJ to reject his testimony. *Smolen*, 80 F.3d at 1284.

The ALJ also considered Littledeer's failure to comply with recommended treatment a reason to discredit his testimony. Tr. 27; *see* SSR 96-7p, *available at* 1996 WL 374186, at *7

---

[2] While Littledeer correctly notes that calloused hands do not *prove* that he performed a level of work over and above what he alleged in his testimony, it was reasonable on this record for the ALJ to make that inference. Pl.'s Br. 36; *see Magallanes*, 881 F.2d at 750 (it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation" if the ALJ's interpretation of the evidence is rational).

10 – OPINION AND ORDER

(an individual's statements "may be less credible if … the medical reports or records show that [he] is not following the treatment as prescribed and there are no good reasons for this failure"). For example, the ALJ noted that Littledeer failed to perform prescribed exercises for his knee impairment, as memorialized by Dr. Smart in January of 2008. Tr. 842. Littledeer's failure to comply with treatment recommendations constitutes an additional reason to discount his credibility. SSR 96-7p, *available at* 1996 WL 374186, at *7.

Finally, the ALJ relied upon treatment notes from examining physicians Delmar Greenleaf, M.D., and William Trueblood, Ph.D., and consultative physician Linda Jensen, M.D., in his credibility finding. Tr. 28, 30. As noted, the ALJ may consider the medical evidence in evaluating a claimant's credibility. *Smolen*, 80 F.3d at 1284. Drs. Greenleaf and Trueblood examined Littledeer in 2007. Tr. 440, 444, 451. Dr. Greenleaf found positive Waddell's signs and observed that Littledeer "overdramatiz[ed]" his complaints. On examination of Littledeer's back, Dr. Greenleaf reported "[n]o disc herniation, spinal stenosis nor foraminal narrowing." Tr. 444. Dr. Trueblood performed a psychodiagnostic exam of Littledeer, and opined that he exhibited an "indiscriminate and exaggerated response pattern." Tr. 440, 444, 451. Dr. Jensen reviewed Littledeer's medical records and opined that his "statements about his ability to function and work activity are not credible." Tr. 567. While Littledeer argues that these opinions do not, considered individually, constitute substantial evidence, they do lend additional weight to the ALJ's credibility determination when considered together and in light of the other evidence discussed above. *See* Pl.'s R. Br. 5-6.

In sum, the ALJ provided specific, clear and convincing reasons supported by substantial evidence in the record for rejecting Littledeer's testimony. Although Littledeer challenges additional reasons the ALJ provided for his credibility finding, this Court will not disturb the

11 – OPINION AND ORDER

ALJ's finding where, as here, it is supported by substantial evidence in the record. *Thomas*, 278

F.3d at 959, *citing Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999).

**II.    Medical Opinion of Martin Smart, M.D.**

Littledeer next argues that the ALJ failed properly to credit the medical opinion of his

treating physician, Martin Smart.  If a physician's opinion is contradicted by the opinion of

another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the

treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  Specific,

legitimate reasons for rejecting a physician's opinion may include reliance on a claimant's

discredited subjective complaints, inconsistency with medical records, inconsistency with a

claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti*, 533 F.3d

at 1040-42; *see also Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995).  Credibility

determinations also bear on evaluations of medical evidence when an ALJ is presented with

conflicting medical opinions. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

Beginning in 2008, Dr. Smart saw Littledeer approximately once a month.  Tr. 710.  In

May, 2010, he completed a physical RFC questionnaire and assessed severe physical limitations,

opining that Littledeer could sit for only 10 to 20 minutes at a time and stand for only 15 minutes

at a time.  Tr. 710-714.  Dr. Smart also stated that Littledeer could never lift 50 pounds, and that

he could only rarely lift and carry 20 pounds or less.  Tr. 712.  The ALJ assigned "little weight"

to Dr. Smart's opinion because it was contradicted by other medical evidence in the record, was

based in part on Littledeer's subjective complaints, and was not supported by the objective

findings.  Tr. 29.

The ALJ noted that Dr. Smart's opinion was contradicted by examining physician Dr.

Greenleaf, who opined that Littledeer showed exaggeration and little deficit in his May, 2007

12 – OPINION AND ORDER

exam. Tr. 437-45. Littledeer argues that Dr. Greenleaf's opinion was not especially probative because Littledeer's back and knee conditions are progressively deteriorating, and more recent medical reports exist in the record. With respect to degenerative conditions, earlier medical evaluations do not constitute substantial evidence to rebut the most recent medical reports. *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985). A May 5, 2010 statement from Dr. Smart notes that Littledeer's back pain "has only increased" over the last two years, suggesting a degenerative condition. Tr. 710. On this record, Dr. Greenleaf's contradictory opinion did not constitute substantial evidence. *Murray*, 722 F.2d at 502.

Dr. Smart's opinion was also contradicted by Dr. Jensen. Tr. 560-67. Dr. Jensen opined that Littledeer could perform medium exertion work and could lift and carry 50 pounds occasionally and 25 pounds frequently. *Id.* She also stated that Littledeer could stand and walk about six hours in an eight hour workday with no other limitations. *Id.* The ALJ credited Dr. Jensen's opinion, stating that it was "an accurate assessment of [Littledeer's] physical abilities." Tr. 29. While the contradictory opinion of a non-examining medical consultant cannot, by itself, constitute substantial evidence, it is sufficient to trigger the legal requirement that the ALJ set forth "specific, legitimate reasons" for rejecting Dr. Smart's opinion. *Murray*, 722 F.2d at 502.

The ALJ reviewed the medical evidence and found that Littledeer "merely had occasional and inconsistent subjective complaints of radicular pain, low back pain and knee pain" and that Dr. Smart's conclusions were unsupported by objective findings. Tr. 29. Incongruity between a physician's opinion and his medical records is a specific, legitimate reason for rejecting that physician's opinion. *Tommasetti*, 533 F.3d at 1041. Dr. Smart noted positive radicular findings in his physical RFC assessment, but these findings to not appear to be supported by objective findings in his treatment notes. Tr. 710. On August 23, 2007, Kent Yundt, M.D., noted

13 – OPINION AND ORDER

objective findings of degenerative spondylosis with degenerative disc disease. Tr. 498. Aside from these objective findings from Dr. Yundt, the record contains only Littledeer's subjective complaints of pain and Dr. Smart's unsubstantiated conclusions regarding Littledeer's limitations due to pain. Due to the lack of substantial evidence supporting Dr. Smart's conclusions, and especially in light of the evidence of Littledeer's work activity, the ALJ provided specific, legitimate reasons for rejecting Dr. Smart's opinion.

Dr. Smart's opinion was also contradicted by evidence of Littledeer's activities. Inconsistency with a claimant's daily activities constitutes a specific, legitimate reason for rejecting a physician's opinion. *Tommasetti*, 533 F.3d at 1041. For example, during the interview with Agent LeFebre, Littledeer was able to stand unsupported for twenty-five minutes. Tr. 523. Littledeer's level of work activity as reported to Agent LeFebvre and discussed above also contradicted Dr. Smart's assessment of his physical limitations. Thus, Littledeer's level of functioning evidenced by his daily activities was a legally sufficient reason for rejecting Dr. Smart's opinion.

Finally, the ALJ noted that Dr. Smart's opinion rested upon Littledeer's discredited subjective reports. Tr. 29. A treating physician's prescribed work restrictions based on subjective reports by a claimant are properly rejected where the claimant is not entirely credible. *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009); *see also Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible"). To the extent that Dr. Smart's findings are based on Littledeer's subjective symptom reports, the ALJ properly refused to incorporate those findings into the RFC. In sum, the ALJ provided specific, legitimate reasons sufficient for rejecting Dr. Smart's opinion, and his finding is therefore upheld.

14 – OPINION AND ORDER

### III.    Mental health providers Marc Williams, M.D., and Stacy Van Epps

Littledeer also argues that the ALJ improperly rejected the opinions of his mental health treatment providers, Dr. Williams and Ms. Van Epps. Ms. Van Epps opined in October 2010 that Littledeer is unable to meet competitive standards in the following areas: consistent paced performance, accepting instructions from supervisors, and responding appropriately to changes in a routine work setting. Tr. 764. She also opined that he would not be able to meet competitive standards in completing a normal workday and workweek without interruptions from psychologically based symptoms. *Id.* She stated that Littledeer's symptoms would cause him to miss about four days per month of work. Tr. 766. She noted the Littledeer had marked difficulties in maintaining social functioning, and in maintaining concentration, persistence or pace. *Id.* Dr. Williams signed a document stating that he agreed with Ms. Van Epps' assessment. Tr. 31, 845-53.

As noted, to reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record. *Valentine*, 574 F.3d at 692. However, only licensed physicians and certain other qualified specialists are considered "[a]cceptable medical sources." 20 C.F.R. § 404.1513(a). Because Ms. Van Epps was not a licensed physician or psychologist, she was an "other" source, § 404.1513(d), and was not entitled to the same deference. *See* § 404.1527; SSR 06–03p. The ALJ may discount testimony from "other" sources by providing "reasons germane to each witness." *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). The ALJ was therefore required to provide germane reasons for rejecting Ms. Van Epps' opinion. 20 C.F.R. 404.1513(d)(1).[3]

---

[3] Although Dr. Williams stated on December 2, 2010 that he was in "complete agreement with" Ms. Van Epps' assessment of Littledeer's limitations, this endorsement does not constitute "close supervision" required in the Ninth Circuit to render what would otherwise be an "other

15 – OPINION AND ORDER

The ALJ rejected Ms. Van Epps' opinion because it conflicted with other medical evidence in the record. *See Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence is a germane reason for rejecting testimony). Instead, the ALJ credited the opinion of non-examining psychological consultant Peter LeBray, Ph.D., who reviewed Littledeer's mental health records and opined that he could perform simple, routine tasks and occasionally complete more detailed or complex tasks. Tr. 31, 546-59, 568-71. Dr. LeBray's opinion contradicted Ms. Van Epps' assessment and thus constituted a germane reason for rejecting her opinion. *Bayliss,* 427 F.3d at 1218.

The ALJ also relied on Dr. Trueblood, who examined Littledeer and opined that he had no "severe" memory impairment. Tr. 31, 451-52. This opinion contradicted Ms. Van Epps' statement that Littledeer "has severe memory impairment." Tr. 765. Dr. Trueblood's conflicting opinion constituted an additional germane reason for rejecting Ms. Van Epps' assessment. *Bayliss,* 427 F.3d at 1218.

The ALJ also refused to credit Dr. Williams' adoption of Ms. Van Epps' opinion. Dr. Williams is an acceptable medical source, and the ALJ was required to provide specific, legitimate reasons for rejecting his affirmation of Ms. Van Epps' controverted opinion. The ALJ's reasons for rejecting Ms. Van Epps' opinion discussed above apply equally to Dr. Williams' affirmation of her opinion. Moreover, the ALJ stated that Dr. Williams' treatment notes "fail[ed] to document" the limitations he confirmed in Ms. Van Epps' assessment. Tr. 31. An ALJ may reject a treating physician's opinion that is not supported by objective evidence. *Batson,* 358 F.3d at 1195. Dr. Williams' conclusions were not substantiated by his own

---

source" opinion an acceptable medical source. Tr. 846-47; *Gomez v. Chater,* 74 F.3d 967, 971 (9th Cir. 1996); *see also Molina,* 674 F.3d at 1111 (where record did not show that "other" source worked under a physician's close supervision, she did not qualify as a medically

objective findings; for example, Dr. Williams' treatment note of May 20, 2010 diagnoses several conditions, but indicates that a bipolar diagnosis is doubtful. Tr. 754. In the same note, Dr. Williams states that Littledeer "probably has some cognitive dysfunction," but is likely to remain stable through sobriety and support. Tr. 753. These findings do not substantiate Ms. Van Epps' more extreme assessment of Littledeer's mental health. The ALJ thus provided legally sufficient reasons for rejecting the opinions of Dr. Williams and Ms. Van Epps. *Batson*, 358 F.3d at 1195.

Littledeer challenges the ALJ's reliance upon the opinions of the non-examining state agency physicians in rejecting Dr. Williams' and Ms. Van Epps' statements. While the opinion of a non-examining physician cannot by itself constitute substantial evidence, a non-examining physician's opinion may amount to substantial evidence so long as it is supported by other evidence in the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the state agency physicians' opinions were supported by the opinions of examining Drs. Greenleaf and Trueblood, and thus constituted substantial evidence. Tr. 434-45, 446-52; *see Tonapetyan*, 242 F.3d at 1149. The ALJ's evaluation of the mental health treatment record was thus supported by substantial evidence and free of legal error, and is therefore affirmed.

IV.    **Lay Witness Testimony of Michelle Littledeer**

Littledeer also challenges the ALJ's rejection of statements made by his sister-in-law, Michelle Littledeer. The ALJ must consider lay witness testimony. 20 C.F.R. § 404.1513(d); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). The ALJ must provide "germane reasons" when rejecting lay testimony. *Id.* The ALJ, however, is not required to address each witness "on an individualized witness-by-witness basis" and may reject lay testimony predicated upon reports of a claimant properly found not credible. *Id.*

---

acceptable treating source); 20 C.F.R. 404.1513(d)(1).

17 – OPINION AND ORDER

Ms. Littledeer completed a Third Party Function Report on November 15, 2008 and testified at the November 3, 2010 hearing. Tr. 75, 285-92. At the hearing, she testified that she had known Littledeer for about eleven years, and had daily contact with him for five or six years. Tr. 71. She stated that Littledeer can work for up to two hours in a day, and that he "can't lift anything heavy." Tr. 73. She stated that when overworked Littledeer's leg swells and he can't get out of bed. Tr. 73-74. He is able to do dishes but cannot do chores like vacuuming because it hurts his back. Tr. 74. Ms. Littledeer also testified that Littledeer's mental health has recently improved because "he's not been drinking." Tr. 75.

The ALJ rejected Ms. Littledeer's statements regarding Littledeer's mental health limitations, noting that the limitations she assessed in her Function Report were "not as problematic since [Littledeer's] abstinence from alcohol." Tr. 27, 75, 285-92. The ALJ relied on her hearing testimony in drawing this conclusion. *Id.* As noted, Ms. Littledeer testified that due to abstinence from alcohol Littledeer's "mental health is a little better" and "he has been a lot nicer and just more concerned." Tr. 75. This change in Littledeer's condition renders Ms. Littledeer's 2008 assessment inaccurate, and therefore was a sufficient germane reason for rejecting Ms. Littledeer's testimony. *See Bayliss*, 427 F.3d at 1218 (inconsistency with the record as a whole is a germane reason for rejecting lay testimony).

Further, the physical limitations assessed by Ms. Littledeer's were contradicted by the opinion of non-examining consultative physician Linda Jensen, M.D. If the ALJ provides arguably germane reasons for discounting lay witness testimony, he need not "clearly link" those reasons to his rejection of that testimony. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ credited consultative physician Dr. Jensen, who opined that Littledeer's level of physical functioning was greater than that indicated by Ms. Littledeer. *See, e.g.,* Tr. 567 (citing reports

18 – OPINION AND ORDER

from examining physicians Dr. Trueblood and Dr. Greenleaf.  Thus, there was sufficient evidence credited in the ALJ's decision for rejecting Ms. Littledeer's statements regarding Littledeer's physical limitations.  The ALJ's rejection of Ms. Littledeer's lay opinion is therefore upheld.[4]

## V.    Listings 12.02, 12.04, 12.06, and 12.08

Littledeer argues that the ALJ erred by failing to find him disabled under Listings 12.02, 12.04, 12.06, or 12.08.  Pl.'s Br. 23, 39.  He argues that based on the evidence from Dr. Williams and Ms. Van Epps, his mental disorders alone impose functional limitations which render him disabled under the Listings.  Pl.'s Br. 23-24.

As discussed above, the ALJ properly rejected the opinions of Ms. Van Epps and Dr. Williams.  The ALJ considered each Listing with respect to the credible evidence in the record and found that Littledeer did not meet the applicable criteria.  Tr. 24.  Because he did not err in his evaluation of the medical evidence, the ALJ did not err in finding that Littledeer did not meet a listed impairment.

## VI.    RFC Assessment

Littledeer argues, finally, that the ALJ erred by omitting certain limitations from the RFC.  The ALJ, however, was not required to incorporate properly rejected limitations into Littledeer's RFC.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008)

---

[4] Any error in the ALJ's treatment of Ms. Littledeer's testimony was harmless because he credited reliable medical evidence elsewhere in his decision that conflicted with Ms. Littledeer's testimony.  *See Molina*, 674 F.3d at 1118-19 (any error in an ALJ's treatment of lay opinion evidence is harmless where the opinion is contradicted by "more reliable medical evidence that the ALJ credited").

(upholding ALJ's step five finding where claimant merely restated his argument that the RFC omitted limitations, which the ALJ had properly rejected).  Because the ALJ incorporated all properly credited limitations in the RFC, he did not err.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision in connection with Littledeer's applications for disability insurance benefits and supplemental security income, is affirmed.

Dated this 17th day of September, 2013.

Honorable Paul Papak
United States Magistrate Judge

20 – OPINION AND ORDER